# EXHIBIT A

**IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT**
**IN AND FOR MARTIN COUNTY, FLORIDA**

ZACHARY R. VOLPE,
DEBORAH WALKER,
RONALD THOMAS AUSSNER,
ROBERT TAYLOR,
CHRISTOPHER JAMES KINER,
KIMBERLY A. SUNSERI,
ALBERT ARFI,
DAVID LAWRENCE BROCK,
MARC THOMAS OVERFELT,
HENRY ROBERT ZAYAS,
INNA PILTSER,
RONALD F. MITCHELL, JR.,
MICHAEL ANTHONY HICKEY,
JESSICA ANNE BAUER,
ROBERT ADAM DEDES, and
ROBERT ROSE,

Case No.

Plaintiffs,

v.

3M COMPANY, f/k/a Minnesota Mining and Manufacturing Company;
E.I. DU PONT DE NEMOURS AND COMPANY;
DUPONT DE NEMOURS, INC.;
THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC; and
CORTEVA, INC.,

Defendants.

_______________________________________/

COPY

**<u>OMNIBUS PRODUCTS LIABILITY AND TOXIC TORT COMPLAINT FOR DAMAGES ARISING FROM PFAS CONTAMINATION AND DEMAND FOR JURY TRIAL</u>**

COME NOW Plaintiffs ZACHARY R. VOLPE, DEBORAH WALKER, RONALD THOMAS AUSSNER, ROBERT TAYLOR, CHRISTOPHER JAMES KINER, KIMBERLY A. SUNSERI, HENRY TILDEN CLEMENTS, ALBERT ARFI, DAVID LAWRENCE BROCK, MARC THOMAS OVERFELT, HENRY ROBERT ZAYAS, INNA PILTSER, RONALD F. MITCHELL, JR., MICHAEL ANTHONY HICKEY, JESSICA ANNE BAUER, ROBERT ADAM DEDES, and ROBERT ROSE (collectively, the "Plaintiffs"), by and through their undersigned counsel, and file this Omnibus Products Liability and Toxic Tort Complaint for Damages Arising from PFAS Contamination and Demand for Jury Trial against Defendants 3M Company, f/k/a Minnesota Mining and Manufacturing Company ("3M"), E.I. du Pont de Nemours and Company ("Old DuPont"), DuPont de Nemours, Inc. ("New DuPont"), The Chemours Company ("Chemours"), The Chemours Company FC, LLC ("Chemours FC"), and Corteva, Inc. (collectively, "Defendants"), and allege as follows:

COPY

**NATURE OF THE ACTION**

1. This is an omnibus products liability and toxic tort action arising from the decades-long research, development, manufacture, marketing, distribution, sale, and concealment of PFAS by the historical manufacturing Defendants, and the successor and assumed liabilities of the remaining Defendants arising from those operations.

2. For more than half a century, 3M, Old DuPont, and their corporate successors and affiliates researched, manufactured, marketed, and profited from PFAS and PFAS-containing products while possessing superior knowledge that these chemicals resist natural degradation, migrate through soil and groundwater, contaminate public drinking water systems, bioaccumulate

in human blood and organs, and are associated with an increased risk of serious disease and adverse health outcomes.

3. Rather than warn regulators, public water systems, downstream users, or consumers of these known hazards, Defendants continued to manufacture, market, distribute, and promote PFAS products while concealing or minimizing the known risks of environmental contamination and human exposure, thereby allowing PFAS to become one of the most pervasive and persistent environmental contaminants in modern history.

4. As a direct and foreseeable result of Defendants' conduct, Plaintiffs were repeatedly exposed to PFAS through contaminated public drinking water supplies serving the communities in which they lived, worked, or regularly consumed potable water. That exposure resulted in the accumulation of PFAS within their bodies and caused or substantially contributed to the development of kidney cancer, testicular cancer, prostate cancer, thyroid disease, ulcerative colitis, chronic kidney disease, hematologic disorders, autoimmune conditions, and other PFAS-associated illnesses.

COPY

5. Although Plaintiffs resided in different communities and were diagnosed with different PFAS-associated diseases, their claims arise from the same continuous and uniform course of wrongful conduct by the same Defendants and depend upon substantially identical evidence regarding PFAS chemistry, toxicology, environmental persistence, bioaccumulation, corporate knowledge, failure to warn, fraudulent concealment, and causation.

6. This action presents common questions of law and fact concerning Defendants' design, manufacture, testing, marketing, distribution, and concealment of PFAS and PFAS-containing products, as well as the foreseeable contamination of public drinking water systems and the resulting injuries sustained by Plaintiffs. Coordinated adjudication of these common issues

will promote judicial economy, avoid inconsistent rulings, reduce duplicative discovery, and ensure the efficient resolution of this complex toxic tort litigation.

7. Plaintiffs therefore bring this omnibus action seeking compensatory damages, medical expenses, medical monitoring costs, punitive damages where authorized by law, and all other legal and equitable relief arising from Defendants' wrongful conduct and the injuries caused by prolonged exposure to PFAS contamination.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action pursuant to Article V, Section 5 of the Florida Constitution and sections 26.012 and 34.01, Florida Statutes, because this is a civil action seeking damages in excess of the jurisdictional minimum of the Circuit Court.

COPY

9. This Court has personal jurisdiction over each Defendant because each Defendant has purposefully availed itself of the privilege of conducting substantial, continuous, and systematic business activities within the State of Florida, including the research, manufacture, marketing, distribution, sale, and supply of per- and polyfluoroalkyl substances ("PFAS") and PFAS-containing products that were intended for use and were in fact used throughout the State of Florida.

10. At all times material hereto, Defendants placed PFAS and PFAS-containing products into the stream of commerce with the expectation and intent that such products would be distributed, marketed, sold, and utilized within the State of Florida, and Defendants derived substantial revenue and economic benefit from those activities.

11. Defendants knew or reasonably should have known that PFAS released from their products would migrate through soil, groundwater, surface water, and interconnected public water

systems, resulting in widespread contamination of potable water supplies used by Florida residents, including Plaintiffs.

12. Venue is proper in Martin County, Florida, pursuant to section 47.011, Florida Statutes, because a substantial portion of the events and omissions giving rise to the claims asserted herein occurred within Martin County, including the contamination of public drinking water supplies serving numerous Plaintiffs, the exposure of numerous Plaintiffs to PFAS-contaminated drinking water, and the resulting injuries sustained within this judicial circuit.

13. Venue is further proper because several Plaintiffs resided in Martin County during the relevant periods of exposure, consumed water supplied by municipal and county water systems located within Martin County, and sustained injuries arising directly from the contamination alleged herein.

COPY

14. The claims asserted in this action arise from the same continuous course of conduct by the same Defendants involving the design, testing, manufacture, marketing, distribution, sale, promotion, and concealment of PFAS and PFAS-containing products and present numerous common questions of law and fact, including Defendants' knowledge of PFAS toxicity and persistence, their failure to warn of known hazards, the environmental migration and bioaccumulation of PFAS, and the causal relationship between PFAS exposure and the injuries alleged herein.

15. Although individual Plaintiffs resided in different communities and were diagnosed with different PFAS-associated diseases, their claims arise from a common series of transactions and occurrences involving substantially identical PFAS compounds, common mechanisms of environmental contamination, common scientific and medical evidence, common corporate conduct, and common legal issues.

16. Joinder of Plaintiffs in this omnibus action will promote judicial economy, avoid duplicative litigation, prevent inconsistent adjudications, conserve judicial and party resources, and permit the efficient resolution of common liability issues while preserving each Plaintiff's right to prove his or her individual exposure, causation, injuries, and damages.

17. Plaintiffs expressly reserve the right to amend this Complaint to add, dismiss, sever, or otherwise modify parties or claims as discovery and case management may require or as otherwise ordered by the Court.

## PARTIES

### A. PLAINTIFFS

COPY

18. Plaintiffs are natural persons who sustained prolonged exposure to per- and polyfluoroalkyl substances ("PFAS") through contaminated public drinking water systems and suffered serious personal injuries and damages as a direct and proximate result of Defendants' conduct.

**Martin County, Florida Plaintiffs**

19. Plaintiff Zachary R. Volpe is a resident and citizen of the State of Florida who, at all relevant times, resided in Stuart, Martin County, Florida, where he consumed and used municipal drinking water contaminated with PFAS. As a result of prolonged exposure, Plaintiff Volpe was diagnosed with testicular cancer in or about June 2023 and has sustained significant personal injuries and damages.

20. Plaintiff Deborah Walker is a resident and citizen of the State of Florida who, at all relevant times, resided in Stuart, Martin County, Florida, where she consumed and used PFAS-contaminated municipal drinking water. As a result of prolonged exposure, Plaintiff Walker was

diagnosed with ulcerative colitis in or about 2017 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

21. Plaintiff Ronald Thomas Aussner is a resident and citizen of the State of Florida who resided in Stuart, Martin County, Florida, and sustained prolonged exposure to PFAS-contaminated drinking water resulting in cancer and related injuries.

22. Plaintiff Robert Taylor is a resident and citizen of the State of Florida who resided in Stuart, Martin County, Florida, and developed renal cell carcinoma following years of exposure to PFAS-contaminated drinking water.

COPY

23. Plaintiff Christopher James Kiner is a resident and citizen of the State of Florida who resided in Stuart, Martin County, Florida, and sustained prolonged exposure to PFAS-contaminated drinking water. As a result of such exposure, Plaintiff Kiner was diagnosed with ulcerative colitis in or about May 2014 and has sustained significant personal injuries, recurring symptoms, medical expenses, and other related damages.

24. Plaintiff Kimberly A. Sunseri is a resident and citizen of the State of Florida who resided in Stuart, Martin County, Florida, and regularly consumed PFAS-contaminated municipal drinking water. As a result of chronic exposure to PFAS, Plaintiff Sunseri was diagnosed with ulcerative colitis in or about 2017 and has sustained continuing injuries, medical expenses, pain and suffering, and other related damages.

25. Plaintiff John Anthony Wright is a resident and citizen of the State of Florida who, while residing in Martin County, Florida, consumed PFAS-contaminated public water and subsequently developed multiple myeloma.

26. Plaintiff Henry Tilden Clements is a resident and citizen of the State of Florida who resided in Martin County, Florida, where he sustained prolonged PFAS exposure through

contaminated drinking water. As a result of such exposure, Plaintiff Clements was diagnosed with kidney cancer in or about June 2015 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

27. Plaintiff Robert Rose is a resident and citizen of the State of Florida who resided in Martin County, Florida, where he consumed PFAS-contaminated drinking water. As a result of prolonged exposure, Plaintiff Rose was diagnosed with prostate cancer in or about 2023 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

**Other Florida Plaintiffs**

COPY

28. Plaintiff Albert Arfi is a resident and citizen of the State of Florida who sustained prolonged exposure to PFAS-contaminated drinking water in Miami-Dade County, Florida. As a direct and proximate result of such exposure, Plaintiff Arfi was diagnosed with kidney cancer in or about 2016 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

29. Plaintiff David Lawrence Brock is a resident and citizen of the State of Florida who has resided in Alachua County, Florida since approximately 2010. During his residency, Plaintiff Brock regularly consumed and used PFAS-contaminated public drinking water and sustained prolonged exposure to PFAS chemicals. As a direct and proximate result of such exposure, Plaintiff Brock was diagnosed with kidney cancer in or about October 2020 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

30. Plaintiff Marc Thomas Overfelt is a resident and citizen of the State of Florida who sustained prolonged exposure to PFAS-contaminated drinking water in Sarasota County, Florida. As a direct and proximate result of such exposure, Plaintiff Overfelt was diagnosed with kidney

cancer in or about May 2025 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

31. Plaintiff Henry Robert Zayas is a resident and citizen of the State of Florida who sustained prolonged exposure to PFAS-contaminated drinking water in St. Lucie County, Florida. As a direct and proximate result of such exposure, Plaintiff Zayas was diagnosed with kidney cancer in or about 2020 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

32. Plaintiff Inna Piltser is a resident and citizen of the State of Florida who sustained prolonged exposure to PFAS-contaminated drinking water in Miami-Dade County, Florida. As a direct and proximate result of such exposure, Plaintiff Piltser was diagnosed with thyroid disease in or about January 2025 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

COPY

33. Plaintiff Ronald F. Mitchell, Jr. is a resident and citizen of the State of Florida who sustained prolonged exposure to PFAS-contaminated drinking water in St. Lucie County, Florida. As a direct and proximate result of such exposure, Plaintiff Mitchell was diagnosed with kidney cancer in or about October 2022 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

34. Plaintiff Michael Anthony Hickey is a resident and citizen of the State of Florida who sustained prolonged exposure to PFAS-contaminated drinking water in Brevard County, Florida. As a direct and proximate result of such exposure, Plaintiff Hickey was diagnosed with kidney cancer in or about 2023 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

35. Plaintiff Jessica Anne Bauer is a resident and citizen of the State of Florida who sustained prolonged exposure to PFAS-contaminated drinking water in Hillsborough County, Florida. As a direct and proximate result of such exposure, Plaintiff Bauer was diagnosed with kidney cancer in or about October 2025 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

36. Plaintiff Robert Adam Dedes is a resident and citizen of the State of Florida who sustained prolonged exposure to PFAS-contaminated drinking water in Volusia County, Florida. As a direct and proximate result of such exposure, Plaintiff Dedes was diagnosed with kidney cancer in or about 2020 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

COPY

**B. DEFENDANTS**

37. Defendant 3M Company, formerly known as Minnesota Mining and Manufacturing Company ("3M"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Minnesota. At all times relevant herein, 3M researched, developed, designed, tested, manufactured, formulated, marketed, distributed, sold, and profited from per- and polyfluoroalkyl substances ("PFAS") and PFAS-containing products that were introduced into the stream of commerce and foreseeably released into the environment, resulting in contamination of public drinking water supplies and the injuries alleged herein.

38. Defendant E.I. du Pont de Nemours and Company ("Old DuPont") is a corporation organized and existing under the laws of the State of Delaware that, for decades, researched, developed, designed, manufactured, processed, marketed, distributed, and sold PFAS chemicals and PFAS-containing products, including compounds that were released into the environment and

contaminated groundwater and public drinking water systems throughout the United States, including the State of Florida.

39. Defendant DuPont de Nemours, Inc. ("New DuPont") is a corporation organized and existing under the laws of the State of Delaware that, through corporate reorganizations, mergers, spin-offs, and related transactions, succeeded to or otherwise retained interests in PFAS-related businesses, assets, operations, obligations, and liabilities. Upon information and belief, New DuPont participated in, directed, benefited from, or assumed responsibility for the manufacture, marketing, distribution, commercialization, and management of PFAS chemicals and PFAS-containing products and is liable under applicable theories of direct, successor, and/or enterprise liability.

COPY

40. Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware that was formed through the corporate separation of Old DuPont and thereafter assumed and continued significant PFAS-related manufacturing, processing, marketing, distribution, and commercial operations. Upon information and belief, Chemours expressly or impliedly assumed PFAS-related assets, operations, obligations, and liabilities and is liable for the wrongful conduct and resulting injuries alleged herein.

41. Defendant The Chemours Company FC, LLC ("Chemours FC") is a Delaware limited liability company that, upon information and belief, participated in, continued, or otherwise facilitated PFAS-related manufacturing, formulation, processing, distribution, and commercial activities relevant to the contamination and injuries alleged herein and is liable for its own conduct and, to the extent established through discovery, for conduct undertaken in concert with the other Defendants.

42. Defendant Corteva, Inc. ("Corteva") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana. Corteva was created through the separation of the former DowDuPont enterprise and, upon information and belief, succeeded to and/or expressly assumed certain liabilities arising from the historical PFAS-related operations of E.I. du Pont de Nemours and Company and its affiliated entities. Upon information and belief, Corteva has contractually undertaken responsibility for portions of legacy PFAS liabilities and is liable under applicable theories of successor liability, assumption of liabilities, enterprise liability, and other applicable principles of Florida law, the precise nature and extent of which will be established through discovery.

COPY

43. At all times relevant herein, Defendants 3M Company, E.I. du Pont de Nemours and Company, DuPont de Nemours, Inc., The Chemours Company, and The Chemours Company FC, LLC, individually and through their respective officers, directors, employees, agents, predecessors, successors, subsidiaries, affiliates, and related entities, researched, developed, tested, manufactured, formulated, marketed, distributed, and sold PFAS and PFAS-containing products throughout the United States, including the State of Florida. Defendant Corteva, Inc. is named not because it directly participated in the historical manufacture or sale of PFAS during Plaintiffs' exposure periods, but because Plaintiffs allege that Corteva subsequently succeeded to and/or assumed certain liabilities arising from those historical PFAS operations through corporate restructuring, separation agreements, and related transactions, the precise nature and extent of which will be established through discovery.

44. Defendants possessed and shared superior knowledge concerning the chemical properties of PFAS, including their persistence in the environment, resistance to degradation,

bioaccumulation in living organisms, mobility through soil and groundwater, and the foreseeable risks of contamination of public drinking water systems and resulting human exposure.

45. Upon information and belief, Defendants shared and relied upon common scientific research, toxicological studies, industry data, internal testing, and commercial practices concerning the development, manufacture, marketing, and management of PFAS and PFAS-containing products, while continuing to manufacture, distribute, and profit from such products despite knowledge of their hazardous characteristics.

46. Acting individually and in concert, Defendants substantially assisted, encouraged, ratified, facilitated, and benefited from a common course of conduct involving the production, commercialization, and dissemination of PFAS and PFAS-containing products, which foreseeably resulted in the widespread release of PFAS into the environment and the contamination of groundwater and public drinking water supplies.

COPY

47. The acts and omissions of each Defendant, whether undertaken individually or collectively, were a direct and proximate cause of the contamination alleged herein and the prolonged PFAS exposure, personal injuries, medical expenses, pain and suffering, and other damages sustained by Plaintiffs.

**COMMON ACTUAL ALLEGATIONS**

**A. PFAS AND PFAS-CONTAINING PRODUCTS**

48. Per- and polyfluoroalkyl substances ("PFAS") are a class of synthetic fluorinated chemicals developed and manufactured for their unique ability to resist heat, water, oil, grease, and chemical degradation. PFAS have been widely incorporated into industrial processes and consumer products for decades, non-stick coatings, stain-resistant materials, food packaging, textiles, metal plating operations, and numerous commercial applications.

49. Among the most extensively manufactured and studied PFAS compounds are perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS"), both of which have been produced, marketed, distributed, or otherwise commercialized by one or more Defendants and have been repeatedly detected in public drinking water systems throughout the United States, including the State of Florida.

50. Unlike naturally occurring substances, PFAS possess an exceptionally strong carbon-fluorine bond that resists biological and environmental degradation. As a result, PFAS persist in soil, groundwater, surface water, wildlife, and the human body for years or decades and are commonly referred to as "forever chemicals."

COPY

51. PFAS are highly mobile within the environment and readily migrate through soil, groundwater, rivers, aquifers, and interconnected public water systems. Once released into the environment, PFAS contamination can spread far beyond its original source, affecting municipal water supplies and exposing entire communities through ordinary household use.

52. PFAS are colorless, odorless, and tasteless and cannot be detected by ordinary consumers without specialized laboratory testing. Consequently, members of the public, including Plaintiffs, could not reasonably discover the presence of PFAS in their drinking water or appreciate the associated health risks through ordinary observation or use.

53. Scientific research has demonstrated that PFAS accumulate within human blood, organs, and tissues following repeated exposure. Unlike many other chemicals, PFAS are eliminated from the human body slowly, allowing concentrations to increase over time through continuous ingestion and environmental exposure.

54. Government agencies, academic researchers, and public health authorities have identified associations between PFAS exposure and numerous adverse health effects, including

kidney cancer, testicular cancer, prostate cancer, thyroid disease, chronic kidney disease, ulcerative colitis and other autoimmune disorders, hematologic conditions, immune dysfunction, liver injury, developmental effects, endocrine disruption, and other serious illnesses.

**B. DEFENDANTS' KNOWLEDGE, CONDUCT, AND SUCCESSOR LIABILITY**

55. For decades, the historical manufacturing Defendants—including 3M Company, E.I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC, together with their predecessors, successors, affiliates, and related entities as applicable—possessed superior and exclusive knowledge concerning the chemical properties, environmental persistence, bioaccumulation, mobility, and toxicity of PFAS through internal research, toxicological testing, environmental monitoring, scientific studies, regulatory communications, and industry collaboration.

COPY

56. The historical manufacturing Defendants knew, or in the exercise of reasonable care should have known, that PFAS released during manufacturing, processing, distribution, commercial use, and disposal would migrate into groundwater, surface water, and public drinking water systems relied upon by millions of individuals, including Plaintiffs, for drinking, cooking, bathing, and other ordinary household purposes.

57. Despite possessing such knowledge, the historical manufacturing Defendants continued to research, develop, manufacture, process, market, distribute, and profit from PFAS and PFAS-containing products while failing to implement reasonable safeguards to prevent environmental releases, failing to adequately investigate the long-term risks to human health and the environment, and failing to provide timely and adequate warnings to regulators, public water suppliers, downstream users, or consumers.

58. Upon information and belief, the historical manufacturing Defendants concealed, minimized, misrepresented, suppressed, or otherwise failed to disclose material information concerning the persistence, environmental mobility, bioaccumulation, and health risks associated with PFAS exposure, thereby delaying regulatory action, preventing consumers from taking reasonable measures to avoid exposure, and contributing to the widespread contamination alleged herein.

59. Upon information and belief, the knowledge, information, records, assets, obligations, and liabilities relating to the historical PFAS business were retained, transferred, allocated, or assumed through subsequent corporate restructurings, including the formation of The Chemours Company, the DowDuPont merger, and the separation of DowDuPont into Dow Inc., DuPont de Nemours, Inc., and Corteva, Inc. Plaintiffs further allege, upon information and belief, that Defendant Corteva, Inc. retained, assumed, or otherwise became responsible for certain liabilities arising from those historical PFAS operations and is liable under the theories of successor liability, assumption of liabilities, enterprise liability, and any other applicable theory recognized under Florida law, the precise nature and extent of which will be established through discovery.

60. Upon information and belief, the agreements governing the DowDuPont merger, the subsequent separation of DowDuPont, and related corporate restructuring transactions allocated, retained, transferred, indemnified, or otherwise addressed liabilities arising from historical PFAS operations. Plaintiffs further allege, upon information and belief, that Corteva, Inc. expressly or impliedly assumed responsibility for certain legacy PFAS liabilities through those agreements and related transactions.

61. Discovery is expected to establish the respective responsibilities of E.I. du Pont de Nemours and Company, DuPont de Nemours, Inc., The Chemours Company, The Chemours

COPY

Company FC, LLC, and Corteva, Inc. concerning PFAS-related liabilities, successor obligations, indemnification agreements, asset transfers, liability allocations, and other corporate restructuring transactions relevant to Plaintiffs' claims.

**C. ENVIRONMENTAL CONTAMINATION AND COMMON EXPOSURE**

62. Plaintiffs plead successor liability, assumption of liabilities, enterprise liability, de facto merger, continuation of enterprise, and all other applicable theories of liability in the alternative. To the extent any Defendant contends that another Defendant retained, assumed, or bears responsibility for liabilities arising from historical PFAS operations, Plaintiffs seek recovery against each Defendant under every applicable legal theory supported by the facts developed in discovery.

COPY

63. As a direct and foreseeable consequence of Defendants' conduct, PFAS entered the environment through manufacturing operations, industrial discharges, product use, disposal practices, wastewater releases, aqueous film-forming foam applications, and other commercial activities and thereafter migrated into groundwater, surface water, and public drinking water systems serving communities throughout Florida and the United States.

64. Plaintiffs were exposed to substantially similar PFAS compounds originating from Defendants' products through common environmental pathways, including the contamination of municipal and regional drinking water supplies used for drinking, cooking, bathing, and other ordinary household purposes.

65. Although Plaintiffs resided in different locations and were diagnosed with different PFAS-associated illnesses, their claims arise from Defendants' uniform course of conduct and involve substantially identical scientific, toxicological, epidemiological, regulatory, and corporate

evidence concerning PFAS chemistry, environmental behavior, corporate knowledge, failure to warn, concealment, and causation.

66. Plaintiffs' injuries represent foreseeable consequences of Defendants' decades-long manufacture, commercialization, distribution, and concealment of PFAS and PFAS-containing products, and the resulting contamination of public drinking water systems.

67. The common factual and legal issues presented by this action predominate over any individualized issues concerning the duration of exposure, diagnosis, or damages, making coordinated adjudication of Plaintiffs' claims the most efficient and equitable means of resolving the controversy.

COPY

## PLAINTIFF SPECIFIC ALLEGATIONS

### A. MARTIN COUNTY PLAINTIFFS

68. Plaintiff Zachary R. Volpe is a natural person and citizen of the State of Florida who, at all times relevant herein, resided in Stuart, Martin County, Florida. Plaintiff Volpe regularly consumed and used municipal drinking water supplied to his residence for drinking, cooking, bathing, and other ordinary household purposes. As a direct and proximate result of prolonged exposure to PFAS-contaminated drinking water, Plaintiff Volpe was diagnosed with testicular cancer in or about June 2023 and has sustained severe personal injuries, medical expenses, pain and suffering, emotional distress, loss of enjoyment of life, and other damages.

69. Plaintiff Deborah Walker is a natural person and citizen of the State of Florida who resided in Stuart, Martin County, Florida, and regularly consumed PFAS-contaminated municipal drinking water. As a direct and proximate result of prolonged PFAS exposure, Plaintiff Walker was diagnosed with ulcerative colitis in or about 2017 and continues to suffer chronic symptoms, medical expenses, pain and suffering, and other damages.

70. Plaintiff Ronald Thomas Aussner is a natural person and citizen of the State of Florida who resided in Stuart, Martin County, Florida, and regularly consumed PFAS-contaminated drinking water for many years. Plaintiff Aussner was diagnosed with cancer in or about 2023 and has sustained substantial personal injuries and related damages.

71. Plaintiff Robert Taylor is a natural person and citizen of the State of Florida who resided in Stuart, Martin County, Florida, and sustained prolonged exposure to PFAS-contaminated drinking water. Plaintiff Taylor was diagnosed with renal cell carcinoma in or about 2022 and required surgical treatment, resulting in significant injuries and damages.

72. Plaintiff Christopher James Kiner is a natural person and citizen of the State of Florida who resided in Stuart, Martin County, Florida, and sustained prolonged exposure to PFAS-contaminated drinking water. As a direct and proximate result of such exposure, Plaintiff Kiner was diagnosed with ulcerative colitis in or about May 2014 and continues to suffer recurring symptoms, medical expenses, and other damages.

COPY

73. Plaintiff Kimberly A. Sunseri is a natural person and citizen of the State of Florida who resided in Stuart, Martin County, Florida, and regularly consumed PFAS-contaminated municipal drinking water. As a direct and proximate result of chronic PFAS exposure, Plaintiff Sunseri was diagnosed with ulcerative colitis in or about 2017 and has sustained continuing injuries, medical expenses, pain and suffering, and other damages.

74. Plaintiff Henry Tilden Clements is a natural person and citizen of the State of Florida who resided in Martin County, Florida, and sustained prolonged PFAS exposure through contaminated drinking water. As a direct and proximate result of such exposure, Plaintiff Clements was diagnosed with kidney cancer in or about June 2015 and has sustained significant personal injuries, medical expenses, pain and suffering, and other related damages.

75. Plaintiff Robert Rose is a natural person and citizen of the State of Florida who resided in Martin County, Florida, and regularly consumed PFAS-contaminated drinking water for approximately seven years preceding his diagnosis. As a direct and proximate result of such exposure, Plaintiff Rose was diagnosed with prostate cancer in or about 2023 and has sustained significant personal injuries and damages.

**B. OTHER FLORIDA PLAINTIFFS**

76. Plaintiff Albert Arfi is a natural person and citizen of the State of Florida who resided in Miami-Dade County, Florida, where he regularly consumed and used PFAS-contaminated drinking water for drinking, cooking, bathing, and other ordinary household purposes. As a direct and proximate result of prolonged PFAS exposure, Plaintiff Arfi was diagnosed with kidney cancer in or about 2016 and has sustained significant personal injuries, medical expenses, pain and suffering, emotional distress, and other related damages.

COPY

77. Plaintiff David Lawrence Brock is a natural person and citizen of the State of Florida who has resided in Alachua County, Florida since approximately 2010. During his residency, Plaintiff Brock regularly consumed and used PFAS-contaminated public drinking water for drinking, cooking, bathing, and other ordinary household purposes. As a direct and proximate result of prolonged PFAS exposure, Plaintiff Brock was diagnosed with kidney cancer in or about October 2020 and has sustained significant personal injuries, medical expenses, pain and suffering, emotional distress, and other related damages.

78. Plaintiff Marc Thomas Overfelt is a natural person and citizen of the State of Florida who resided in Sarasota County, Florida, where he regularly consumed and used PFAS-contaminated drinking water. As a direct and proximate result of prolonged PFAS exposure, Plaintiff Overfelt was diagnosed with kidney cancer in or about May 2025 and has sustained

significant personal injuries, medical expenses, pain and suffering, emotional distress, and other related damages.

79. Plaintiff Henry Robert Zayas is a natural person and citizen of the State of Florida who resided in St. Lucie County, Florida, where he regularly consumed and used PFAS-contaminated drinking water for ordinary household purposes. As a direct and proximate result of prolonged PFAS exposure, Plaintiff Zayas was diagnosed with kidney cancer in or about 2020 and has sustained significant personal injuries, medical expenses, pain and suffering, emotional distress, and other related damages.

80. Plaintiff Inna Piltser is a natural person and citizen of the State of Florida who resided in Miami-Dade County, Florida, where she regularly consumed and used PFAS-contaminated drinking water. As a direct and proximate result of prolonged PFAS exposure, Plaintiff Piltser was diagnosed with thyroid disease in or about January 2025 and has sustained significant personal injuries, medical expenses, pain and suffering, emotional distress, and other related damages.

81. Plaintiff Ronald F. Mitchell, Jr. is a natural person and citizen of the State of Florida who resided in St. Lucie County, Florida, where he regularly consumed and used PFAS-contaminated drinking water. As a direct and proximate result of prolonged PFAS exposure, Plaintiff Mitchell was diagnosed with kidney cancer in or about October 2022 and has sustained significant personal injuries, medical expenses, pain and suffering, emotional distress, and other related damages.

82. Plaintiff Michael Anthony Hickey is a natural person and citizen of the State of Florida who resided in Brevard County, Florida, where he regularly consumed and used PFAS-contaminated drinking water. As a direct and proximate result of prolonged PFAS exposure,

COPY

Plaintiff Hickey was diagnosed with kidney cancer in or about 2023 and has sustained significant personal injuries, medical expenses, pain and suffering, emotional distress, and other related damages.

83. Plaintiff Jessica Anne Bauer is a natural person and citizen of the State of Florida who resided in Hillsborough County, Florida, where she regularly consumed and used PFAS-contaminated drinking water. As a direct and proximate result of prolonged PFAS exposure, Plaintiff Bauer was diagnosed with kidney cancer in or about October 2025 and has sustained significant personal injuries, medical expenses, pain and suffering, emotional distress, and other related damages.

COPY

84. Plaintiff Robert Adam Dedes is a natural person and citizen of the State of Florida who resided in Volusia County, Florida, where he regularly consumed and used PFAS-contaminated drinking water. As a direct and proximate result of prolonged PFAS exposure, Plaintiff Dedes was diagnosed with kidney cancer in or about 2020 and has sustained significant personal injuries, medical expenses, pain and suffering, emotional distress, and other related damages.

**C. COMMON INDIVIDUAL ALLEGATIONS**

85. Plaintiffs did not know, and through the exercise of reasonable diligence could not reasonably have known, that their respective illnesses were caused or substantially contributed to by exposure to PFAS-contaminated drinking water until each Plaintiff acquired facts reasonably indicating a connection between PFAS contamination, his or her exposure, and the diagnosed disease. The dates on which Plaintiffs acquired such knowledge varied according to each Plaintiff's individual circumstances.

86. Prior to acquiring such knowledge, Plaintiffs reasonably believed that their respective illnesses resulted from unknown or unrelated causes. Because PFAS are colorless, odorless, tasteless, bioaccumulative, and not detectable without specialized testing, Plaintiffs could not reasonably discover either the existence of PFAS contamination in their drinking water or the causal relationship between their exposure and their illnesses through ordinary diligence.

87. Defendants possessed superior and exclusive knowledge regarding the persistence, toxicity, environmental migration, bioaccumulation, and disease associations of PFAS but concealed, suppressed, minimized, or failed to disclose material information concerning those hazards. As a result, Plaintiffs were deprived of facts necessary to recognize that they possessed actionable claims until substantially later.

COPY

88. Upon acquiring information reasonably connecting PFAS exposure, contaminated drinking water, and their respective illnesses, each Plaintiff acted diligently in investigating and pursuing his or her legal rights. Accordingly, Plaintiffs allege that their claims accrued only when they knew or reasonably should have known sufficient facts to associate their injuries with PFAS exposure and Defendants' wrongful conduct, and that any applicable statute of limitations is further tolled by Defendants' fraudulent concealment and other applicable equitable doctrines.

**D. DELAYED DISCOVERY, FRAUDULENT CONCEALMENT, AND ACCRUAL**

89. Plaintiffs' claims arise from latent exposure to PFAS chemicals. PFAS contamination is not perceptible to ordinary consumers because PFAS chemicals are colorless, odorless, tasteless, persistent, and detectable only through specialized scientific testing. As a result, Plaintiffs could not reasonably discover either their exposure to PFAS or the relationship between PFAS exposure and their illnesses through ordinary diligence.

90. Defendants possessed superior knowledge regarding the persistence, toxicity, bioaccumulation, environmental migration, and health risks associated with PFAS chemicals but concealed, suppressed, minimized, or failed to disclose those material facts. Defendants' conduct prevented Plaintiffs from timely discovering the factual basis for their claims.

91. At the time many Plaintiffs received their respective medical diagnoses, neither their treating physicians nor governmental authorities advised them that their illnesses were associated with PFAS exposure or that PFAS contamination existed in the drinking water systems serving their communities. Consequently, Plaintiffs lacked sufficient facts to reasonably associate their illnesses with Defendants' conduct.

COPY

92. Each Plaintiff first acquired knowledge reasonably connecting his or her illness to PFAS-contaminated drinking water only after learning facts sufficient to place that Plaintiff on notice of a potential claim. Upon acquiring such knowledge, each Plaintiff acted diligently in investigating and pursuing his or her legal rights.

93. The dates set forth below identify when each Plaintiff first acquired sufficient information to reasonably suspect a connection between PFAS exposure and his or her disease. Plaintiffs do not allege that those dates necessarily constitute the legal accrual date of their causes of action, which remains subject to applicable Florida law and proof developed in discovery.

**E. INDIVIDUAL ACCRUAL ALLEGATIONS**

94. Plaintiff Zachary R. Volpe did not know, and through the exercise of reasonable diligence could not reasonably have known, that his testicular cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his disease, PFAS exposure, and Defendants' conduct. Upon acquiring such

information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

95. Plaintiff Walker did not know, and through the exercise of reasonable diligence could not reasonably have known, that her ulcerative colitis was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until she acquired sufficient facts reasonably connecting her illness, her PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate her diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to her injuries. Upon acquiring such information, Plaintiff acted diligently in investigating her claims and promptly sought legal counsel.

COPY

96. Plaintiff Klein did not know, and through the exercise of reasonable diligence could not reasonably have known, that his prostate cancer and ulcerative colitis were caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illnesses, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnoses with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

97. Plaintiff Aussner did not know, and through the exercise of reasonable diligence could not reasonably have known, that his cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that

Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

98. Plaintiff Taylor did not know, and through the exercise of reasonable diligence could not reasonably have known, that his renal cell carcinoma was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

COPY

99. Plaintiff Christopher James Kiner did not know, and through the exercise of reasonable diligence could not reasonably have known, that his ulcerative colitis was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

100. Plaintiff Kimberly A. Sunseri did not know, and through the exercise of reasonable diligence could not reasonably have known, that her ulcerative colitis was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until she acquired sufficient facts reasonably connecting her illness, her PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate her diagnosis with PFAS contamination or to suspect

that Defendants' conduct contributed to her injuries. Upon acquiring such information, Plaintiff acted diligently in investigating her claims and promptly sought legal counsel.

101. Plaintiff John Anthony Wright did not know, and through the exercise of reasonable diligence could not reasonably have known, that his multiple myeloma was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

COPY

102. Plaintiff Henry Tilden Clements did not know, and through the exercise of reasonable diligence could not reasonably have known, that his kidney cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

103. Plaintiff Robert Rose did not know, and through the exercise of reasonable diligence could not reasonably have known, that his prostate cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect

that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

104. Plaintiff Albert Arfi did not know, and through the exercise of reasonable diligence could not reasonably have known, that his kidney cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

COPY

105. Plaintiff David Lawrence Brock did not know, and through the exercise of reasonable diligence could not reasonably have known, that his kidney cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

106. Plaintiff Marc Thomas Overfelt did not know, and through the exercise of reasonable diligence could not reasonably have known, that his kidney cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring

such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

107. Plaintiff Henry Robert Zayas did not know, and through the exercise of reasonable diligence could not reasonably have known, that his kidney cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

COPY

108. Plaintiff Inna Piltser did not know, and through the exercise of reasonable diligence could not reasonably have known, that her thyroid disease was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until she acquired sufficient facts reasonably connecting her illness, her PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate her diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to her injuries. Upon acquiring such information, Plaintiff acted diligently in investigating her claims and promptly sought legal counsel.

109. Plaintiff Ronald F. Mitchell, Jr. did not know, and through the exercise of reasonable diligence could not reasonably have known, that his kidney cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

110. Plaintiff Michael Anthony Hickey did not know, and through the exercise of reasonable diligence could not reasonably have known, that his kidney cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

COPY

111. Plaintiff Jessica Anne Bauer did not know, and through the exercise of reasonable diligence could not reasonably have known, that her kidney cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until she acquired sufficient facts reasonably connecting her illness, her PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate her diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to her injuries. Upon acquiring such information, Plaintiff acted diligently in investigating her claims and promptly sought legal counsel.

112. Plaintiff Robert Adam Dedes did not know, and through the exercise of reasonable diligence could not reasonably have known, that his kidney cancer was caused or substantially contributed to by exposure to PFAS-contaminated drinking water until he acquired sufficient facts reasonably connecting his illness, his PFAS exposure, and Defendants' conduct. Prior to that time, Plaintiff had no reasonable basis to associate his diagnosis with PFAS contamination or to suspect that Defendants' conduct contributed to his injuries. Upon acquiring such information, Plaintiff acted diligently in investigating his claims and promptly sought legal counsel.

113. The foregoing allegations identify the circumstances under which each Plaintiff first acquired sufficient information to reasonably connect his or her illness to PFAS exposure and Defendants' conduct. Plaintiffs allege these facts in support of their contentions regarding delayed discovery, fraudulent concealment, equitable tolling, and any other applicable tolling or accrual principles under Florida law. Plaintiffs do not allege that any particular date set forth herein constitutes the legal accrual date of a cause of action, which remains a mixed question of law and fact to be determined under the applicable law and the evidence developed in this action.

COPY

## CAUSES OF ACTION

## COUNT I-NEGLIGENCE

(*Against All Defendants*)

114. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 109 as though fully set forth herein.

115. Defendants owed Plaintiffs and the general public a duty to exercise reasonable care in the research, design, testing, manufacture, formulation, marketing, distribution, sale, handling, storage, disposal, and control of PFAS and PFAS-containing products so as to prevent foreseeable harm and environmental contamination.

116. Defendants further owed a duty to investigate the health and environmental risks associated with PFAS, to prevent foreseeable releases into groundwater and public drinking water systems, and to provide timely and adequate warnings regarding known or reasonably knowable hazards.

117. Defendants breached these duties by, among other acts and omissions:

a) Failing to adequately research and test PFAS for long-term human and environmental safety;

b) Failing to implement reasonable safeguards to prevent environmental releases;

c) Failing to warn regulators, water providers, downstream users, and consumers of known PFAS hazards;

d) Continuing to manufacture, market, and distribute PFAS despite knowledge of foreseeable contamination and human exposure; and

e) Concealing or minimizing information concerning PFAS toxicity, persistence, and bioaccumulation.

COPY

118. Defendants knew or reasonably should have known that PFAS released from their products would migrate through groundwater and public drinking water systems and expose individuals, including Plaintiffs, to harmful concentrations of PFAS.

119. As a direct and proximate result of Defendants' negligence, Plaintiffs sustained PFAS exposure and suffered the personal injuries and damages alleged herein.

**COUNT II**

**STRICT PRODUCT LIABILITY-DESIGN DEFECT**

(*Against All Defendants*)

120. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 109.

121. The historical manufacturing Defendants designed, manufactured, formulated, marketed, distributed, and sold PFAS and PFAS-containing products. Plaintiffs further allege that Corteva is liable under the successor-liability and assumption-of-liabilities theories alleged herein.

122. The products were defective and unreasonably dangerous because they persist indefinitely in the environment, migrate into drinking water supplies, bioaccumulate in the human body, and create unreasonable risks of serious disease and injury.

123. At the time the products left Defendants' control, safer and technologically feasible alternative formulations, materials, or designs existed that would have substantially reduced or eliminated the risk of widespread environmental contamination and human exposure.

124. The defective design of Defendants' PFAS products was a direct and proximate cause of Plaintiffs' exposure, injuries, and resulting damages.

COPY

**COUNT III**

**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

(*Against All Defendants*)

125. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 109.

126. Defendants knew or should have known that PFAS chemicals were persistent, bioaccumulative, environmentally mobile, and capable of contaminating public drinking water supplies and causing serious human disease.

127. Despite possessing superior knowledge concerning these hazards, Defendants failed to provide adequate warnings or instructions to regulators, water providers, downstream users, and consumers regarding the foreseeable risks associated with PFAS exposure.

128. The absence of adequate warnings rendered Defendants' PFAS products defective and unreasonably dangerous when placed into the stream of commerce.

129. Had adequate warnings been provided, Plaintiffs and their communities could have taken reasonable measures to prevent or substantially reduce PFAS exposure.

130. Defendants' failure to warn was a direct and proximate cause of Plaintiffs' injuries and damages.

**COUNT IV**

**NEGLIGENT FAILURE TO WARN**

(*Against All Defendants*)

131. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 109.

132. Defendants owed Plaintiffs a duty to exercise reasonable care in communicating known or reasonably knowable risks associated with PFAS and PFAS-containing products.

133. Defendants negligently failed to investigate, disclose, update, and communicate material information regarding PFAS persistence, environmental migration, bioaccumulation, and adverse health effects.

COPY

134. Defendants knew that PFAS contamination would remain undetectable by ordinary consumers and that Plaintiffs would unknowingly continue consuming contaminated drinking water absent adequate warnings.

135. As a direct and proximate result of Defendants' negligent failure to warn, Plaintiffs sustained prolonged PFAS exposure and suffered the injuries and damages alleged herein.

**COUNT V**

**FRAUDULENT CONCEALMENT AND FRAUD BY OMISSION**

(*Against All Defendants*)

136. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 109.

137. Defendants possessed material information concerning PFAS toxicity, persistence, environmental mobility, bioaccumulation, and the foreseeable risks of contamination and human exposure that was not reasonably available to Plaintiffs or the general public.

138. Defendants intentionally concealed, suppressed, minimized, or failed to disclose material information while continuing to manufacture, market, distribute, and profit from PFAS and PFAS-containing products.

139. Defendants knew that PFAS contamination was colorless, odorless, tasteless, and incapable of detection by ordinary consumers without specialized testing and that Plaintiffs would reasonably rely upon Defendants' omissions concerning product safety.

140. Plaintiffs neither knew nor reasonably could have discovered the nature, source, or health risks of their PFAS exposure until years after Defendants' wrongful conduct, despite exercising reasonable diligence.

141. Defendants' concealment and omissions directly and proximately caused Plaintiffs' continued exposure, delayed discovery of their claims, and the personal injuries and damages alleged herein.

COPY

142. Defendants acted willfully, maliciously, recklessly, and with conscious disregard for the health and safety of Plaintiffs and the public, entitling Plaintiffs to recover punitive damages to the fullest extent permitted by Florida law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs ZACHARY R. VOLPE, DEBORAH WALKER, RONALD THOMAS AUSSNER, ROBERT TAYLOR, CHRISTOPHER JAMES KINER, KIMBERLY A. SUNSERI, ALBERT ARFI, DAVID LAWRENCE BROCK, MARC THOMAS OVERFELT, HENRY ROBERT ZAYAS, INNA PILTSER, RONALD F. MITCHELL, JR., MICHAEL ANTHONY HICKEY, JESSICA ANNE BAUER, ROBERT ADAM DEDES, and ROBERT ROSE, individually and according to each Plaintiff's respective proof, respectfully request that this Court enter judgment in their favor and against Defendants 3M Company, E.I. du Pont de Nemours and Company, DuPont de Nemours, Inc., The Chemours Company, and The Chemours Company FC, LLC, against each Defendant according to its respective liability as determined at trial and as permitted by Florida law:

A. Compensatory damages in an amount to be determined at trial for all past, present, and future injuries and losses sustained by each Plaintiff, including, but not limited to, physical pain and suffering, mental anguish, emotional distress, disability, disfigurement, inconvenience, loss of capacity for the enjoyment of life, and all other non-economic damages recoverable under Florida law;

B. Recovery of all past and future medical, hospital, pharmaceutical, rehabilitation, nursing, diagnostic, and other reasonable and necessary healthcare expenses incurred or reasonably certain to be incurred as a result of Plaintiffs' PFAS-related injuries;

C. Recovery of the costs of future medical monitoring, surveillance, diagnostic testing, cancer screening, and other medically necessary preventative care reasonably required because of Plaintiffs' prolonged PFAS exposure and increased risk of future disease;

D. Recovery of all past and future lost earnings, loss of earning capacity, loss of employment benefits, loss of household services, and all other economic damages sustained by each Plaintiff according to proof at trial;

E. An award of punitive damages to the extent permitted by Florida law and upon compliance with section 768.72, Florida Statutes, based upon Defendants' willful, wanton, malicious, fraudulent, and reckless disregard for the health, safety, and welfare of Plaintiffs and the public;

F. Prejudgment interest, where authorized by law, together with post-judgment interest at the statutory rate;

G. Taxable costs of this action and all other costs recoverable under applicable law;

COPY

H. Such further legal or equitable relief as the Court deems just, proper, and appropriate under the circumstances; and

I. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right pursuant to Article I, Section 22 of the Florida Constitution and Rule 1.430 of the Florida Rules of Civil Procedure.

COPY

Dated August 3, 2026

Respectfully Submitted
By: /s/ Travis R. Walker
Travis R. Walker, Esq.
Florida Bar No. 036693
1100 SE Federal Highway
Stuart, Florida 34994
Telephone: (772) 708-0952
travis.walker@traviswalkerlaw.com
service@traviswalkerlaw.com
*Attorney for Plaintiff*